Dale M. HARVEY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10569.

Court of Appeals of Alaska.

Sept. 14, 2012.

Andrew Steiner, Bend, Oregon, for the Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

Dale M. Harvey petitioned the superior court for post-conviction relief, contending that he received ineffective assistance of counsel from Larry A. Wiggins, the attorney who represented him in his underlying criminal case. The superior court denied Harvey's petition, and Harvey now appeals.

Although the facts of Harvey's case potentially raise several issues, Harvey's claims in this appeal raise questions of a more limited scope. We are asked to define a trial attorney's post-judgement obligations toward a convicted criminal defendant in cases where the attorney has been retained to represent the defendant solely in the trial court proceedings.

For the reasons explained in this opinion, and in accordance with the United States Supreme Court's decision in *Roe v. Flores–Ortega*,[1] we hold that (1) when a defendant indicates an interest in pursuing an appeal, or (2) when the defendant's trial attorney either knows or reasonably should know that a rational person in the defendant's situation might want to appeal, the trial attorney—whether privately retained or court-appointed—is obligated to engage in meaningful consultation with the defendant concerning the defendant's potential post-judgement remedies, the likelihood that the contemplated post-judgement litigation would succeed, and the potential consequences to the defendant of that post-judgement litigation.

(Given the facts of Harvey's case, we need not decide whether trial attorneys in criminal cases might have these same obligations even in situations that are not covered by either of the two *Flores–Ortega* criteria.)

We further hold that if the defendant decides to pursue an appeal, the trial attorney must take steps to preserve the defendant's right to appeal—steps such as filing a notice of appeal—if the defendant does not yet have a substitute attorney to take these needed steps. This duty applies even though it is fully understood by both the defendant and the trial attorney that the attorney will not be representing the defendant (or has not yet agreed to represent the defendant) in the appellate litigation.

As we explain in this opinion, the evidence presented to the superior court during the litigation of Harvey's petition for post-conviction relief shows that Harvey had at least one colorable ground for pursuing post-judgement litigation. The evidence also shows that Harvey's trial attorney was aware, or reasonably should have been aware, that Harvey had this potential post-judgement claim, and that Harvey might want to pursue it.

Finally, even viewing the evidence in the light most favorable to the superior court's denial of Harvey's petition for post-conviction relief, Harvey's trial attorney failed to meaningfully consult with Harvey about potential post-judgement remedies, and the attorney likewise failed to take any action on Harvey's behalf, other than perhaps advising Harvey to contact the Public Defender Agency if he was considering an appeal. This was a violation of the trial attorney's obligations to Harvey.

### Introduction to the underlying facts

The facts described here are drawn from the documents and the testimony presented to the superior court during the litigation of Harvey's petition for post-conviction relief. Our description of Harvey's case is divided into separate parts because, for purposes of this appeal, Harvey's litigation involves three distinct stages: (1) the events leading up to Harvey's decision to enter into a plea agreement with the State, (2) the events that occurred at Harvey's sentencing, and (3) the events that occurred after the superior court sentenced Harvey.

The first two stages of the proceedings are discussed in the section labeled "Underlying facts, Part 1." The third stage of the proceedings—the post-judgement stage—is discussed in the section labeled "Underlying facts, Part 2".

1. 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

*Underlying facts, Part 1: from Harvey's indictment to his sentencing*

In early 2003, Dale M. Harvey was indicted on two counts of first-degree sexual abuse of a minor and two counts of second-degree sexual abuse of a minor (all involving the same victim). Harvey was represented by a private attorney, Larry A. Wiggins.

The retainer agreement (*i.e.*, the contract between Wiggins and Harvey) specified that Wiggins did not do appeals, and that Wiggins was only agreeing to represent Harvey in the trial court proceedings.

In August 2003, Wiggins engaged in plea negotiations on Harvey's behalf with Assistant District Attorney Rachel Gernat of the Palmer District Attorney's Office. Gernat offered to let Harvey plead guilty to a single reduced count of attempted first-degree sexual abuse, with an agreed-upon sentence of 5 years to serve. Harvey accepted this offer.

But before this plea agreement could be formalized in court, the Attorney General issued a new policy regarding plea agreements in sexual assault and sexual abuse cases. Under this new policy, the local district attorney had to personally approve any plea agreement that reduced an unclassified or class A sexual felony to a lesser degree of crime.

Harvey's most serious offenses (the two counts of first-degree sexual abuse) were unclassified felonies, and Harvey's plea agreement with Gernat called for these charges to be reduced to a single count of attempted first-degree sexual abuse. Accordingly, the Palmer District Attorney, Roman Kalytiak, had to personally approve Harvey's plea agreement.

When Gernat submitted the proposed plea agreement to Kalytiak for his approval, Kalytiak rejected it. Kalytiak's policy was that, in prosecutions for sexual felonies, his office would normally offer *either* a reduction of the charge, *or* an agreed-upon sentence, but not both.

Because Kalytiak refused to approve the plea agreement, the agreement had to be renegotiated.

(Harvey does not argue that this initial plea agreement became enforceable as soon as he accepted the prosecutor's proposal. *See Mabry v. Johnson*, 467 U.S. 504, 510–11, 104 S.Ct. 2543, 2548, 81 L.Ed.2d 437 (1984); *State v. Jones*, 751 P.2d 1379, 1381–82 (Alaska App.1988); and *Turk v. State*, 662 P.2d 997, 999–1000 (Alaska App.1983). These cases hold that the government is generally not bound by a plea agreement until the defendant detrimentally relies on the agreement—by entering a guilty plea, or by giving testimony or providing information to the authorities, or by incurring some other sort of legally cognizable prejudice to the defendant's case.)

During the second round of plea negotiations, Gernat offered the same reduced charge (attempted first-degree sexual abuse), but now with no ceiling on Harvey's time to serve. In response, Wiggins suggested an agreed-upon sentence of 6 years to serve (*i.e.*, one more year to serve than before). But Gernat reminded Wiggins that Kalytiak would not accept a plea agreement that called for both a reduced charge and an agreed-upon sentence.

What happened next is a subject of considerable dispute.

According to Wiggins, Gernat offered a compromise solution. Even though Kalytiak had forbidden Gernat from offering both a reduced charge and an agreed-upon sentence, Gernat promised Wiggins that, at Harvey's sentencing hearing, she would *recommend* a sentence of no more than 6 years to serve.

In his testimony at the post-conviction relief hearing, Wiggins repeatedly stated that Gernat's promise did not constitute an "agreement", but it is unclear what Wiggins meant by this. Viewing Wiggins's testimony in light of a letter that he wrote to Harvey about the status of the plea negotiations (a letter that we are about to explain), and in light of statements that Wiggins made to Harvey at the sentencing hearing itself (statements that we are likewise about to explain), it appears Wiggins was saying that (1) there was no sentence "agreement" in the sense of an agreed-upon sentence of 6 years to serve, but that (2) Wiggins believed that

Gernat had affirmatively promised to recommend no more than 6 years to serve.

Wiggins testified that he asked Gernat to put this promise in writing, but she refused—apparently because she thought that her boss, Kalytiak, might view even this lesser promise as a forbidden "sentence agreement". For this reason (according to Wiggins), Gernat told Wiggins that her promise regarding the State's sentencing recommendation would remain off the record, and it would not be part of the formal plea agreement presented to the superior court at Harvey's change-of-plea hearing.

On August 25, 2003, following his conversation with Gernat, Wiggins wrote a letter to Harvey in which he described the State's latest proposal. In this letter, Wiggins told Harvey:

> As you know[,] I have asked Ms. Gernat to agree to a five[-]year cap on [your] time to serve[. She] now says she cannot do that, but [she] did say that she would not ask for more than six years. I asked her to put that in writing[,] but she says she won't because it would amount to a sentence agreement[,] and the DA will not agree to a sentence agreement[.]

In addition to Wiggins's testimony (summarized above) and the text of Wiggins's letter of August 25th (just quoted), Harvey submitted an affidavit which addressed this issue. In his affidavit, Harvey declared that Wiggins told him "that the prosecutor had made an oral commitment to seek a sentence of six years with one suspended" [*sic*], but that "there was some sort of ban on the arrangement [that] he had reached with the state", so "the arrangement could not be put on paper", and Harvey "[was] not [to] mention the agreement in court, even if [he] was specifically asked about 'promises' when [he] entered his plea."

At the evidentiary hearing in the post-conviction relief litigation, Harvey took the stand and re-affirmed the assertions in his affidavit. He testified that Wiggins instructed him not to tell the judge about Gernat's promise to recommend no more than 6 years to serve. According to Harvey, Wiggins told him that he should remain silent on this issue because Gernat's promise was just a verbal promise, and not part of the formal plea agreement.

When Wiggins was questioned at the evidentiary hearing as to whether he instructed Harvey not to tell the judge about the purported under-the-table sentencing agreement, Wiggins denied that he had done this—but then he conceded that Harvey might reasonably have *inferred*, from what Wiggins told him, that he should not tell the judge about Gernat's promise if he wanted the judge to accept the plea bargain:

> *Post–Conviction Relief Attorney:* Mr. Wiggins, did you ever tell Mr. Harvey, at the change-of-plea hearing, to keep silent about Ms. Gernat's [promise that] she [was] going to recommend 6 years?
>
> *Wiggins:* No, I—I never told him to keep silent about it. But ... he may have [inferred] from what I told him that he shouldn't say anything. Because I made it very clear to him that [this] was not part of the plea agreement.
>
> *PCR Attorney:* Okay.
>
> *Wiggins:* And I may have had a discussion with him that when he tells the judge that he agrees to [the plea agreement], and he's doing it knowingly and voluntarily, [and] that if he [expresses] any doubt ..., or the court even senses some doubt, then we may not [be able to] go through with it.

Gernat, for her part, offered a very different account of her conversation with Wiggins. Gernat flatly denied that she had promised Wiggins that she would limit her sentencing recommendation to 6 years to serve. She declared that "[she] would not have made a secret agreement behind Mr. Kalytiak's back", nor would she have said to Wiggins, "This is our agreement—wink, wink—[even though] I'm not going to put it in writing."

Regardless of exactly what was said between Wiggins and Gernat, and regardless of exactly what Gernat promised or did not promise, two things are not disputed.

First, when Harvey appeared before Superior Court Judge Beverly W. Cutler on September 12, 2003 to formally confirm the plea bargain, and to enter a guilty plea to the

reduced charge of attempted first-degree sexual abuse, neither Harvey nor Wiggins told Judge Cutler that Gernat had made a promise to them concerning the State's sentencing recommendation—even though Judge Cutler pressed the parties to put every aspect of their agreement on the record. (Gernat was not present at this change-of-plea hearing; it was handled by another attorney in her office.)

Second, when Harvey later appeared for sentencing in front of Judge Cutler, Gernat recommended a sentence of 7 years to serve (10 years' imprisonment with 3 years suspended). Judge Cutler ultimately followed Gernat's recommendation and sentenced Harvey to serve 7 years.

At the evidentiary hearing in the post-conviction relief litigation, Wiggins testified that he was "surprised and upset" when Gernat recommended that the court sentence Harvey to serve 7 years. Wiggins's testimony on this issue is corroborated by the audio record of the sentencing hearing itself. This audio record shows that, shortly after Gernat recommended a sentence of 7 years to serve, Wiggins and Harvey engaged in the following whispered conversation at counsel table:

*Wiggins:* She [is] recommending 7 years to serve. I may have grounds for appeal on that. I've got to go look at something.

*Harvey:* I heard her say 7 years.

*Wiggins:* I know. That's what she said. And I've got notes from her that she wouldn't ask for more than 6, even though she couldn't make it part of the agreement.

*Underlying facts, Part 2: after Harvey's sentencing*

As we just explained, shortly after Gernat recommended a sentence of 7 years to serve, Wiggins held a whispered conversation with Harvey at counsel table. In this conversation, Wiggins reiterated that Gernat had promised not to recommend more than 6 years to serve—and that Harvey "[might] have grounds for appeal on that". Wiggins then told Harvey that he "[had] to go look at something" in order to investigate this possible appeal issue.

But according to Wiggins's testimony at the post-conviction relief evidentiary hearing, he never engaged in follow-up discussions with Harvey on this issue. Wiggins simply let the matter die.

When Wiggins was asked (at the post-conviction relief evidentiary hearing) how he perceived his responsibility to Harvey following the sentencing, Wiggins testified that he was not required to assist Harvey with respect to any potential appeal. Rather, his only obligation was "to inform [Harvey that] he [had] a right to an appeal."

When Harvey's post-conviction relief attorney pressed Wiggins regarding Harvey's potential grounds for seeking some form of post-judgement relief, Wiggins's answers suggest that he gave the matter little thought:

*Post–Conviction Relief Attorney:* Was it your understanding [that] Mr. Harvey had a right to something more than a sentence appeal [under these circumstances]?

*Wiggins:* I don't know what he had a right to. I honestly don't—because I don't know what his arguments are on appeal. And [in] my discussions with Mr. Harvey, I don't think the word "appeal" was [ever] used.... The only thing I think I've ever heard [about] was [this action for] post-conviction relief.

According to Wiggins, Harvey never directly asked him to file an appeal. But Wiggins also testified that, in any event, he believed he was powerless to seek judicial enforcement of Gernat's promise—because Gernat had refused to put the promise in writing, or to otherwise make the promise a formal part of the plea agreement:

*Post–Conviction Relief Attorney:* Do you remember any discussion of taking an appeal on that [*i.e.*, the issue of Gernat's alleged promise regarding the State's sentencing recommendation]? Do you remember discussing an appeal that day?

*Wiggins:* No.

*PCR Attorney:* Do you remember discussing an appeal [at] any time in the 30 days following [the imposition of] that sentence?

*Wiggins:* I never discussed an appeal.

*PCR Attorney:* You never discussed an appeal? Do you ...

*Wiggins:* I—I discussed that he certainly had the possibility for an appeal, [and] I did have a discussion with him about what I was going to do, but it wasn't along the lines of an appeal.

*PCR Attorney:* What was it along the lines of?

*Wiggins:* I was going to go talk to [the district attorney,] Roman Kalytiak, and find out what was going on. First—the whole idea of the [State's] withdrawing of the [initial] plea [offer]. I'd already had *that* discussion with him. And now, I have representations from an assistant D.A., and they're not standing by it, and—even though it was not part of the deal. But at the same time, I knew that I didn't have anything that I could argue on, because it was—it was not part of a plea agreement.

In other words, Wiggins apparently reached the conclusion that, even though Gernat had made a promise to him, that promise was unenforceable. Wiggins reached this conclusion even though he knew that Harvey had relied on this promise—or, more precisely, that Harvey had relied on Wiggins's description of the alleged promise—when Harvey changed his plea to guilty:

*Wiggins:* I know that [Harvey] was relying on what I had told him that Ms. Gernat had told me—that she was going to ask for [no more] than 6 years. But it was very clear—it had to be very clear[, because] I put it in writing to him—... that [this promise] was not part of the plea agreement.

Harvey, for his part, presented a significantly different version of his post-sentencing discussions with Wiggins. Harvey testified that he and Wiggins repeatedly discussed the possibility of filing an appeal based on the fact that Gernat had recommended more than 6 years to serve—but, according to Harvey, Wiggins ultimately refused to do anything:

*Harvey:* I had numerous discussions with [Wiggins]. I called him, and we talked about the appeal issue. I mean, he was ... starting to prepare [the appeal]. As the weeks progressed, he assured me

he was working on it, and getting it ready. Finally, within the last week [before the deadline]—because I knew that it was due within 30 days—and within the last week before the deadline, he informed me that ... he wasn't going to do it, that he didn't think it was in my best interest.... I asked him to go forward anyway, and he refused [to do] it.

In sum, Wiggins and Harvey offered starkly contradictory versions of their discussions following Harvey's sentencing. Wiggins testified that he never held substantive discussions with Harvey about whether Harvey should appeal or should seek some alternative kind of post-judgement relief. Harvey testified that he and Wiggins had repeated discussions concerning the possibility of an appeal (based on the fact that Gernat recommended more than 6 years to serve), and that Wiggins assured Harvey that he was "working on it"—but Wiggins ultimately refused to file the appeal because he concluded (apparently unilaterally) that an appeal would not be in Harvey's best interests.

When Harvey litigated this issue in his petition for post-conviction relief, Superior Court Judge Beverly W. Cutler rejected Harvey's claim that Wiggins had failed to provide effective assistance of counsel in connection with a potential appeal. Judge Cutler declared that Harvey had "[no] reasonable expectation or reasonable belief that Mr. Wiggins would file an appeal for him"—because Wiggins's retainer agreement with Harvey specified that Wiggins did not do appeals, and that he would represent Harvey only in the trial court proceedings.

Judge Cutler later added that Harvey had failed to prove that "[he] reasonably believed that [he] had some contractual relationship with Mr. Wiggins that included him filing an appeal ... for [Harvey], as opposed to being willing as an attorney to give [Harvey] his two cents' worth about what might be able to be done in regard to an appeal, but not by him."

As we explain in the next section of this opinion, these findings are premised on a misunderstanding of the applicable law. Regardless of whether one credits Wiggins's

testimony or Harvey's testimony, Wiggins violated his duty to Harvey: either by failing to meaningfully consult with Harvey concerning his potential post-judgement remedies, or by failing to abide by Harvey's decision concerning whether to appeal.[2]

Judge Cutler certainly had ample grounds for concluding that Harvey could not reasonably expect Wiggins to *represent him on appeal*. But as we explain in the next section of this opinion, the *filing* of an appeal— *i.e.*, the filing of a notice of appeal, or the filing of a motion to extend the time for filing an appeal, so that a client's right of appeal is preserved—is part of a *trial attorney's* duties if the attorney is aware that the client might want to appeal, and that the client will otherwise not be able to obtain and consult with substitute counsel before the filing deadline.

Moreover, with regard to advising Harvey about a potential appeal or other post-judgement litigation, Wiggins was obligated to give Harvey more than simply "his two cents' worth". Rather, Wiggins was obligated to provide Harvey with meaningful consultation concerning Harvey's post-judgement options: the claims that Harvey might pursue, Harvey's likelihood of success, and the consequences of pursuing this post-judgement litigation.

*A trial attorney's duty to advise a criminal defendant regarding potential post-judgement remedies, and the attorney's duty to take action to protect the defendant's rights before stopping work on the case*

Most criminal defendants in this state are represented by court-appointed counsel who provide their services at public expense through either the Public Defender Agency or the Office of Public Advocacy. For these defendants, Alaska law clearly states that their trial attorneys have a continuing obligation to represent them after the trial court has entered its judgement.

Under Alaska Appellate Rule 209(b)(4), when the Public Defender Agency or the Office of Public Advocacy (either through a salaried attorney or through contract coun-

sel) has represented a defendant in the trial court, the agency "shall remain as appointed counsel throughout an appeal or petition for review at public expense . . . and shall not be permitted to withdraw except upon the grounds authorized in [Alaska] Administrative Rule 12." Moreover, even when the defendant's trial counsel is justified in withdrawing, no withdrawal is permitted until the defendant's appellate rights are preserved: "If an appeal is to be taken, trial counsel will not be permitted to withdraw until the notice of appeal and the documents required to be filed with the appeal by [Appellate] Rule 204 have been accepted for filing by the clerk of the appellate courts." *Ibid.*

But the foregoing rule does not apply to Harvey's case. Harvey was not represented by court-appointed counsel, but rather by a privately retained attorney, and this attorney's retainer agreement with Harvey specified that the attorney would represent Harvey only in the trial court proceedings, and not on appeal.

Thus, Harvey's case presents the issue of whether, in the days following the sentencing, Harvey's trial attorney, Wiggins, had a duty to meaningfully advise Harvey about his potential post-judgement remedies, and a duty to take steps to protect Harvey's ability to pursue those remedies, even though Wiggins had agreed only to represent Harvey in the trial court.

### (a) Harvey's proposal: a rule of universal application

Harvey asks us to adopt the rule that attorneys in this situation (whether privately retained or court-appointed) must *always* engage in meaningful consultation with their convicted client about the possibility of pursuing an appeal or seeking other post-judgement remedies. Under this proposed rule, a defense attorney whose client was convicted would always be required to advise the client regarding their potential grounds for appeal, the likelihood of success, and the potential

---

**2.** *See* Alaska Professional Conduct Rule 1.2(a); *McLaughlin v. State*, 173 P.3d 1014, 1015–16 (Alaska App.2007); *Coffman v. State*, 172 P.3d 804, 807 (Alaska App.2007); *Simeon v. State*, 90 P.3d 181, 184 (Alaska App.2004).

consequences of seeking or obtaining post-judgement relief.

Harvey's position is supported by Alaska Professional Conduct Rule 1.2(a) and the American Bar Association's standards relating to the defense attorney's function in criminal prosecutions.

The ABA standards recognize that a privately retained lawyer may structure their retainer agreement so that the lawyer's obligation to the client extends only through the trial court proceedings—so that the defendant must either negotiate a new retainer with the lawyer for the appeal, or the defendant must seek another attorney to handle the appeal. Indeed, under ABA Defense Function Standard 4–3.1(a), one of the things that a defense attorney should discuss with a client at the outset of their relationship is "whether ... counsel will continue to represent the accused if there is an appeal."

But even so, if a lawyer's client is convicted, both Alaska Professional Conduct Rule 1.2(a) and the ABA Standards require the lawyer to engage in meaningful consultation with the defendant about the possibilities for an appeal, and the likely outcomes of an appeal.

Professional Conduct Rule 1.2(a) declares that an attorney representing a defendant in a criminal prosecution "shall abide by the client's decision, *after consultation with the lawyer,* as to ... whether to take an appeal." This italicized language implicitly requires the trial lawyer to fully advise the defendant about the defendant's options for appeal, as well as the likely success and potential consequences of those options, so that the defendant can make an informed decision.

We note that Alaska's Professional Conduct Rule 1.2(a) is based on the corresponding provision of the ABA Model Rules of Professional Conduct—rules crafted for nationwide applicability. In most American jurisdictions, the notice of appeal is among the last pleadings filed in the *trial* court. Before the summer of 1995, it used to be that way in Alaska, too.[3] Under current Alaska procedure, the notice of appeal is an appellate court pleading rather than a trial court pleading. *See* Criminal Rule 32.5(a). However, this procedure was apparently amended purely for administrative convenience—because, in Alaska (as opposed to most states), the appellate courts and the trial courts are all part of one unified court system.

The obligation of a trial attorney to meaningfully advise their convicted client about a potential appeal is echoed in ABA Defense Function Standard 4–5.2. Subsection (a)(v) of this standard declares that the decision whether to appeal is "[among the] decisions which are to be made by the accused after full consultation with counsel". The accompanying Commentary emphasizes that "the accused should have the full and careful advice of counsel" on this matter.

This obligation of the trial attorney, described generally in Professional Conduct Rule 1.2(a) and ABA Defense Function Standard 4–5.2, is described in greater detail in ABA Defense Function Standard 4–8.2, "Appeal":

(a) After conviction, defense counsel should explain to the defendant the meaning and consequences of the court's judgment and the defendant's right of appeal. Defense counsel should give the defendant his or her professional judgment as to whether there are meritorious grounds for appeal [as well as] the probable results of an appeal. Defense counsel should also explain to the defendant the advantages and disadvantages of an appeal. The decision whether to appeal must be the defendant's own choice.

(b) Defense counsel should take whatever steps are necessary to protect the defendant's rights of appeal.

**3.** Until July 15, 1995, Alaska Criminal Rule 32.1(a) stated that when a defendant was convicted of a crime, the judge or magistrate who entered the judgement was to advise the defendant that "he [had] the right to appeal ... by filing a notice of appeal with the clerk of court"—that is, the clerk of the *trial* court. This provision was superseded by current Criminal Rule 32.5(a), which states that the judge or magistrate shall advise the defendant that they have the right to appeal "by filing a notice of appeal with the clerk of the appellate courts". *See* Supreme Court Order No. 1184, issued December 16, 1994, and effective July 15, 1995.

The accompanying Commentary explains that the duty of meaningfully advising the defendant about potential post-judgement remedies falls to the *trial attorney* because "[a] defendant needs effective representation and advice in the relatively short period immediately following conviction[,] when the decision whether to appeal must be made."

The ABA Commentary notes that, in cases where the trial attorney is not obligated to represent the defendant on appeal, there can be a gap in the defendant's legal representation, "sometimes for months", at a time when the defendant's right of appeal is at stake. For this reason, the trial attorney should not be permitted to walk away from the case without giving the defendant meaningful advice about post-judgement remedies:

> Lawyers, whether retained or assigned [only for] trial, sometimes take the view that their responsibilities end with the final judgment of the trial court[,] and communication between defendant and attorney frequently ceases.... To make the right to counsel meaningful, representation must be continuous throughout the criminal process. [Further, because] of the intimate familiarity with the record of the trial court proceedings, trial counsel is in the best position to advise the defendant concerning the factors to be weighed in reaching the decision whether to appeal.

> [C]ounsel [must] discuss frankly and objectively ... the possible errors that could be [raised] on appeal, their relative strengths and weaknesses, and the probable outcome of an appeal.... To make the defendant's ultimate choice a meaningful one, counsel's evaluation of the case must be communicated in a comprehensible manner.... [The defendant's] decision is a critical one[,] since claims of trial error are ordinarily lost if they are not raised on appeal. Because of the importance of [this] decision, trial counsel should always consult promptly with the defendant[.]

Commentary to ABA Defense Function Standard 4–8.2, "Advising Defendant Concerning Appeal".

For this same reason (the need for speedy action to preserve a defendant's post-judgement rights), ABA Defense Function Standard 4–8.2(b) requires the trial attorney to take the steps necessary to preserve the defendant's right of appeal—steps such as filing a notice of appeal, or filing a motion for an extension of time to file the appeal—if it appears that the defendant will not otherwise have an attorney to do this. As the accompanying Commentary explains, "Frequently, this [obligation] may include perfecting the appeal itself, even though arrangements [will] have to be made for other counsel to represent the defendant before the appellate court."

This duty to take action to preserve the defendant's post-judgement rights is echoed in the Commentary to ABA Sentencing Standard 18–5.19, which declares that "defense counsel, even if retained ... only for the trial court phase of a prosecution, ... [has] the minimal professional responsibility to take the necessary steps to protect the [defendant's] right to appeal [if the defendant decides to appeal]."

#### (b) *The current law: the United States Supreme Court's decision in Roe v. Flores–Ortega*

In *Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the United States Supreme Court addressed the scope of a trial attorney's obligation to discuss a potential appeal with a defendant when the defendant has not affirmatively indicated, one way or another, whether they wish to appeal. The Supreme Court rejected the rule that defense attorneys must *always* discuss a potential appeal with their client in these circumstances—because (as the Court explained), under *Strickland v. Washington*,[4] the question of whether a defendant received ineffective assistance of counsel must be answered based on the specific facts of the case. *Flores–Ortega*, 528 U.S. at 479–480, 120 S.Ct. at 1035–36.

In other words, even though it might be preferable for defense attorneys to engage in these discussions whenever their client is convicted, and even if defense attorneys

4. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

might be *ethically* bound to engage in these discussions with every convicted client, an attorney's failure to perform this task in a particular case does not necessarily amount to ineffective assistance of counsel, if there is no reason to believe that the defendant was disadvantaged by the lack of legal consultation.

However, the Supreme Court held that a defense attorney *does* violate a defendant's right to effective assistance of counsel if the attorney fails to engage in meaningful discussions with the defendant about the possibility of an appeal in either of two situations: (1) when the defendant has given the attorney a reasonable indication that they are interested in appealing, or (2) when there are objective reasons to think that a rational person in the defendant's position might want to appeal. *Id.*, 528 U.S. at 480, 120 S.Ct. at 1036.

■ Under the *Flores–Ortega* rule, Harvey's attorney, Wiggins, was obligated to engage in meaningful consultation with Harvey about the possibility of seeking post-judgement remedies. This is true regardless of whether one credits Harvey's testimony or, alternatively, Wiggins's testimony at the post-conviction relief evidentiary hearing.

According to Harvey, he affirmatively asked Wiggins to pursue an appeal, and Wiggins refused. This satisfies the first of the *Flores–Ortega* criteria: that the defendant indicated an interest in appealing.

According to Wiggins, he and Harvey never engaged in substantive discussions of a potential appeal, and Harvey never directly told him that he was interested in pursuing an appeal. But even under Wiggins's version of events, the fact remains that the prosecutor recommended 7 years to serve at Harvey's sentencing hearing when, according to Wiggins, she had earlier promised to recommend no more than 6 years to serve.

Viewing the evidence in the light most favorable to Harvey, the prosecutor's promise concerning the sentencing recommendation may have been enforceable against the State, and Harvey may have been entitled either to withdraw his plea or to demand specific performance of that promise (in the form of a new sentencing hearing where the State could recommend no more than 6 years to serve). *See Santobello v. New York*, 404 U.S. 257, 261–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971), holding that a defendant's right to due process is violated when the government induces the defendant to accept a plea bargain by promising to recommend a particular type of sentence, or to refrain from making any sentencing recommendation, and then the government fails to abide by its promise. *See also Puckett v. United States*, 556 U.S. 129, 137, 129 S.Ct. 1423, 1430, 173 L.Ed.2d 266 (2009).

Moreover, Wiggins's whispered conversation with Harvey at the sentencing hearing—a conversation on this very issue—demonstrates that Wiggins immediately recognized that this was a potential ground for post-judgement litigation. (Wiggins told Harvey, "I may have grounds for appeal on that.") Thus, Wiggins knew that there were objective reasons to think that a rational person in Harvey's situation might want to appeal or to seek some other post-judgement remedy.

Accordingly, under either version of the facts, Wiggins was obligated by the *Flores–Ortega* rule to engage in meaningful consultation with Harvey about potential post-judgement remedies. And because this is so, we have no need to decide whether to adopt the universal rule that Harvey proposes.

### (c) Does Flores–Ortega apply to privately retained attorneys?

■ In its brief to this Court, the State suggests that the *Flores–Ortega* rule does not apply, and that Wiggins had a lesser obligation to Harvey, because Wiggins was a privately retained attorney rather than a court-appointed attorney. (Remember that, under Alaska Appellate Rule 209(b)(4), court-appointed attorneys are generally required to continue representing a defendant on appeal, but the rule does not impose a similar obligation on privately retained attorneys.)

We note, at the outset, that the State's suggestion appears to be inconsistent with both Alaska Professional Conduct Rule 1.2(a) and the two ABA Defense Function Standards we have been discussing, Standards 4–5.2(a)(v) and 4–8.2. Under Professional Con-

duct Rule 1.2(a), *all* attorneys who represent criminal defendants must provide their convicted clients with meaningful consultation regarding a potential appeal. And the ABA's Defense Function standards likewise apply to all trial attorneys, whether court-appointed or privately retained.

It is true that, in *Flores–Ortega*, the Supreme Court rejected a rule that defense attorneys would automatically be deemed ineffective if, following their client's conviction, they failed to consult with the client about a possible appeal. Instead, the Supreme Court held that, under the federal constitution, a court must engage in a fact-specific inquiry in order to determine whether a defense attorney's failure to consult with their client about a potential appeal amounted to ineffective assistance of counsel. But the Supreme Court never suggested that one of the facts to be considered is whether the attorney was privately retained. Instead, the two-part *Flores–Ortega* test focuses on whether the attorney knew, or had reason to know, that the defendant might potentially be interested in pursuing an appeal.

Subsequent court decisions on this topic support the proposition that privately retained attorneys have the same duty as court-appointed attorneys to meaningfully advise their clients about a possible appeal, and a duty to take any necessary steps to preserve their clients' right of appeal. As the Supreme Court of Kentucky explained in *Hiatt v. Clark*, 194 S.W.3d 324, 330 (Ky. 2006),

> Although the ABA Standards contemplate that [not all] defense attorneys may represent the same client at trial and throughout the appeals process, ... the resounding message is that defense attorneys, because of their intimate knowledge of the trial proceedings and their possession of unique information regarding possible post-conviction claims, have an obligation to cooperate with their clients' attempts to challenge their convictions.

A trial attorney's duty to protect the client's right of appeal "may include perfecting the appeal, even though arrangements may have been made for other counsel to represent the defendant before the appellate court." *Commonwealth v. Ross*, 289 Pa.Super. 104, 432 A.2d 1073, 1075 (1981), quoting the Commentary to ABA Defense Function Standard 4–8.2. *See also United States v. Ruth*, 768 F.Supp. 1428, 1435 (D.Kan.1991).

For other cases where courts have applied the *Flores–Ortega* standard to privately retained counsel who informed their clients that they would not continue to represent them on appeal, *see Raney v. State*, 986 So.2d 468 (Ala.Crim.App.2007); *Esters v. State*, 894 So.2d 755 (Ala.Crim.App.2003); and *Wallace v. State*, 121 S.W.3d 652 (Tenn. 2003); *Cabinatan v. United States*, unpublished, 2011 WL 255691, *5 (D.Haw.2011) (rejecting the contention that, because the defendant's trial attorney "was not retained or paid to prosecute an appeal, he therefore owed no duty to Cabinatan to file a notice of appeal."); *Richardson v. United States*, 612 F.Supp.2d 709, 715–16 (N.D.W.Va.2009) (holding that trial counsel owes a criminal defendant a duty to file a notice of appeal, regardless of whether the attorney was retained for the appeal or not); *Schaefer v. United States*, unpublished, 2008 WL 6138029, *1, *3 (S.D.Ga.2008) (finding ineffective assistance of counsel when, following sentencing, the defendant expressed a desire to appeal and his retained counsel told him, "Don't drag me into it; you're on your own.").

We therefore conclude that *Flores–Ortega* governs the conduct of privately retained attorneys. And as we have already explained, the *Flores–Ortega* test was met in Harvey's case, regardless of whether one accepts Harvey's or Wiggins's version of events. Accordingly, Wiggins had an obligation to engage in meaningful consultation with Harvey about his potential post-judgement remedies, and an obligation to take action to preserve Harvey's appellate rights.

*Application of this law to Harvey's case*

The evidence presented during Harvey's post-conviction relief litigation shows that Harvey had at least one plausible post-judgement claim, and that either Wiggins refused to file an appeal despite Harvey's request (Harvey's version of events), or Wiggins

failed to meaningfully advise Harvey concerning his post-judgement options (Wiggins's version of events). Under either version of events, Wiggins failed to honor his post-judgement obligations to Harvey, and Harvey was denied the effective assistance of counsel in this regard. Accordingly, this portion of the superior court's ruling is RE-VERSED.

■ We conclude that Harvey is entitled to return to the *status quo ante*. That is, Harvey should be placed in the same situation he was in following the superior court's entry of judgement against him in his underlying criminal case. Harvey must be given the opportunity to consult with an attorney concerning his post-judgement options (including the likely success and potential consequences of post-judgement litigation), and then decide what he wishes to do.

We wish to make it clear, both to the superior court and the parties, that we express no opinion on the other disputes in this case—in particular, the factual dispute as to whether Gernat made a promise to Wiggins concerning the State's sentencing recommendation, and the legal dispute as to whether that promise (if made) would be enforceable against the State under *Santobello v. New York*, 404 U.S. 257, 261–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971), and *Puckett v. United States*, 556 U.S. 129, 137, 129 S.Ct. 1423, 1430, 173 L.Ed.2d 266 (2009), either by allowing Harvey to withdraw his plea or by requiring specific performance.

Harvey shall have 60 days from the issuance of this opinion to consult an attorney and to file an appeal in his underlying criminal case or to pursue other remedies as he may see fit.

We do not retain jurisdiction over this case.