NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

MARLON MACK,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12672
Trial Court No. 3AN-09-04467 CI

O P I N I O N

No. 2738 — January 6, 2023

Appeal from the Superior Court, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Shelley K. Chaffin, Law Office of Shelley K. Chaffin, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge WOLLENBERG.

The Alaska Court of Appeals is an intermediate appellate court with jurisdiction over criminal and post-conviction relief cases. Under Alaska law, if a party receives an adverse final decision in this Court, the party may file a petition for hearing in the Alaska Supreme Court. Although the supreme court has absolute discretion

whether to grant or deny the petition for hearing — *i.e.*, whether to hear the petitioned case on the merits — a party nonetheless has the right to *file* the petition seeking review of this Court's decision.

In this appeal from a successive post-conviction relief action, Marlon Mack argues that he established a *prima facie* case of ineffective assistance of counsel based on his previous appellate attorneys' alleged failure to inform him of his right to file a petition for hearing in the Alaska Supreme Court — first, after he lost his direct appeal in this Court, and then, after he lost his first post-conviction relief appeal in this Court. Because we conclude that Mack's case requires further proceedings, including an evidentiary hearing on at least one of his claims, we vacate the superior court's dismissal of his most recent post-conviction relief application and remand for further proceedings consistent with this opinion.

*General factual overview and summary of our decision*

In 2002, Mack was convicted by a jury of first-degree murder for strangling and killing his girlfriend.[1] Mack was represented by court-appointed counsel. Mack later challenged his conviction and sentence in this Court, and we affirmed.[2] Mack's appellate counsel did not file a petition for hearing in the Alaska Supreme Court.

After losing his appeal, Mack filed an application for post-conviction relief, challenging the effectiveness of his trial attorney. The superior court rejected Mack's

---

[1] AS 11.41.100(a)(1)(A).

[2] *Mack v. State*, 2004 WL 1126281, at *8 (Alaska App. May 19, 2004) (unpublished).

claim; he appealed to this Court, and we again affirmed.[3] Mack's post-conviction relief appellate counsel did not file a petition for hearing in the Alaska Supreme Court.

Mack subsequently filed a second application for post-conviction relief — *i.e.*, a "*Grinols*" application.[4] In the *Grinols* application, Mack raised two primary claims. First, Mack challenged the competence of his post-conviction appellate attorney — *i.e.*, the attorney who represented him before this Court in his first post-conviction relief appeal. He argued that this appellate attorney had incompetently failed to file a petition for hearing or at least inform him of that option after he lost his post-conviction relief appeal in this Court. Second, Mack raised a "layered" post-conviction relief claim. In this layered claim, Mack argued that his post-conviction relief attorney in the superior court had incompetently failed to include, as one of the claims for post-conviction relief, that Mack's attorney on direct appeal had a duty to file a petition for hearing or at least inform Mack of that option.

Mack argued that the failure of his two appellate attorneys to inform him about the possibility of filing a petition for hearing precluded him from further pursuing his issues on appeal and later seeking habeas corpus relief in federal court (because he had failed to exhaust his state remedies).[5] Mack argued that, to establish prejudice, he

---

[3]     *See Mack v. State*, 2009 WL 1099432, at *3 (Alaska App. Apr. 22, 2009) (unpublished). Mack's post-conviction relief attorney did not file a notice of appeal of the superior court's denial of his post-conviction relief application. The superior court subsequently found that this attorney had provided ineffective assistance of counsel by failing to file the notice of appeal, and authorized Mack to pursue an untimely appeal, about a year after the denial of his post-conviction relief application.

[4]     *See Grinols v. State*, 74 P.3d 889, 896 (Alaska 2003) (authorizing a criminal defendant to file a second post-conviction relief application challenging the effectiveness of their attorney in their first post-conviction relief proceeding).

[5]     *See* 28 U.S.C. § 2254(b)(1).

was not required to show a reasonable possibility that the supreme court would have ruled in his favor on either petition; he only needed to show a reasonable possibility that, but for the deficient representation of his appellate attorneys, he would have filed a petition for hearing.[6]  Mack alleged that he met this standard, and he therefore asked the superior court to restore his right to file petitions for hearing in both of his prior appeals.

Upon the State's motion, the court dismissed Mack's application.  The court agreed with Mack that he was entitled to "meaningful consultation" from his appellate attorneys regarding his right to file a petition for hearing in the supreme court.  But the court nonetheless concluded either that this obligation had been fulfilled or that Mack could not show prejudice.  Mack now appeals that dismissal.

We have previously addressed an attorney's duty to consult with a criminal defendant or post-conviction relief applicant about their right to appeal a final judgment to this Court.  We have held that an attorney has a legal duty to engage in meaningful consultation with a defendant regarding a direct appeal in one of two circumstances — when the defendant indicates an interest in pursuing an appeal, or when the defendant's attorney knows or reasonably should know that a rational person in the defendant's situation might want to appeal.[7]  In the context of a first post-conviction relief proceeding, we have similarly held that counsel has "the obligation to ascertain whether

---

[6]  *See Broeckel v. State*, 900 P.2d 1205, 1208 (Alaska App. 1995) (holding that a defendant need only show that their attorney incompetently failed to preserve their right to appeal in order for that right to be automatically restored).

[7]  *Harvey v. State*, 285 P.3d 295, 297 (Alaska App. 2012).  In *Harvey*, we declined to decide whether a criminal defense attorney has a duty to consult with a convicted client about the possibility of filing a direct appeal outside of these two contexts.  *Id.*

the defendant wishes to appeal and, if so, the obligation to initiate appellate proceedings."[8]

Mack's case requires us to examine whether this obligation should extend to petitions for hearing — *i.e.*, to requests for relief filed in the supreme court after a defendant loses in this Court.[9] More specifically, we must determine (1) the scope of an attorney's legal duty to inform a defendant who loses an appeal in this Court about the option of filing a petition for hearing in the supreme court, and (2) the circumstances under which a defendant is entitled to reinstatement of their right to file a petition for hearing if the attorney fails to fulfill this duty.

For the reasons explained in this opinion, we conclude that Mack was entitled to meaningful consultation from each of his attorneys regarding the resolution of his case in this Court and his right to file a petition for hearing challenging our decision. We additionally conclude that, under the circumstances of this case, further proceedings in the superior court are necessary.

*An attorney's duty to advise a criminal defendant or post-conviction relief applicant about the right to file an appeal*

We begin by discussing the right of appeal in Alaska criminal cases, and a defense attorney's duty to advise a criminal defendant regarding this right.

---

[8]     *Wassilie v. State*, 331 P.3d 1285, 1290 (Alaska App. 2014).

[9]     This Court also occasionally receives petitions for hearing in situations where a person convicted of a misdemeanor filed their direct appeal of right in the superior court, rather than directly in this Court. *See* AS 22.07.020(d)(1) (providing that the right to appeal to the court of appeals is waived if an appellant chooses instead to appeal the final decision of the district court to the superior court under AS 22.10.020(e)). The principles discussed in this case apply equally to that situation.

In Alaska, a criminal defendant convicted after a trial has the right to appeal their criminal conviction(s) directly to this Court. The defendant's appeal to this Court from a final criminal judgment is a "matter of right."[10] That is, the defendant has both the right to file the appeal, and the corresponding right to a decision on the merits by this Court.[11]

Indigent criminal defendants are entitled to the assistance of court-appointed counsel both in the trial court and on direct appeal.[12] And all criminal defendants are entitled to the effective assistance of counsel at both stages.[13] The law is

---

[10] AS 22.07.020(d).

[11] *See Rozkydal v. State*, 938 P.2d 1091, 1094 (Alaska App. 1997) (discussing the distinction between the right to appeal and the right to petition).

[12] Right to counsel at trial: *See Gideon v. Wainwright*, 372 U.S. 335 (1963) (holding that, under the Sixth Amendment, an indigent defendant has the right to court-appointed counsel in all criminal prosecutions); *Alexander v. State*, 490 P.2d 910, 915-16 (Alaska 1971) (recognizing that article I, section 11 of the Alaska Constitution — and by extension, AS 18.85.100, the Public Defender Act — guarantees an indigent defendant in a criminal prosecution the right to the assistance of counsel).

Right to counsel on direct appeal: *See Halbert v. Michigan*, 545 U.S. 605, 606 (2005) (holding that indigent defendants have the right to appointed counsel for all first-tier criminal appeals, whether discretionary or "as of right"); *Douglas v. California*, 372 U.S. 353 (1963) (recognizing that a state affording a right of appeal to a criminal defendant must also supply counsel for an indigent defendant in order to make that appeal more than a "meaningless ritual").

*See also* AS 18.85.100(a) (providing that an indigent person under formal criminal charge is entitled "to be represented, in connection with the crime or proceeding, by an attorney to the same extent as a person retaining an attorney is entitled").

[13] U.S. Const. amends. VI, XIV; Alaska Const. art. I, §§ 7, 11; *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (recognizing that criminal defendants are entitled to the effective assistance of counsel in the criminal proceeding and on direct appeal); *Risher v. State*, 523 P.2d 421, 423 (Alaska 1974) ("The mere fact that counsel represents an accused does not
(continued...)

well-settled that, in the context of a direct appeal, effective assistance of counsel includes the duty to file a notice of appeal if directed to do so by the defendant.[14] This obligation also exists under the Alaska Rules of Professional Conduct.[15]

The first major case in Alaska addressing an attorney's obligation to file a notice of appeal on behalf of a criminal defendant is *Broeckel v. State*.[16] In *Broeckel*, the defendant's court-appointed attorney failed to file a notice of appeal, even though it was clear that the defendant intended to appeal.[17] Relying on the rules of professional responsibility and the appellate rules, we held that defense counsel had acted incompetently in functionally withdrawing from the case without doing anything to preserve the defendant's right to appeal.[18]

We further held that, in the context of an attorney's incompetent failure to preserve a criminal defendant's right to appeal, a defendant did not need to establish that they would have prevailed on the merits of any of the appellate issues as a prerequisite

---

[13] (...continued)
assure th[e] constitutionally-guaranteed assistance. The assistance must be 'effective' to be of any value.").

[14] *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Harvey v. State*, 285 P.3d 295, 297, 306 (Alaska App. 2012).

[15] Alaska R. Prof. Conduct 1.2(a) ("In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to . . . whether to take an appeal.").

[16] *Broeckel v. State*, 900 P.2d 1205 (Alaska App. 1995).

[17] *Id.* at 1206.

[18] *Id.* at 1207-08 (citing Alaska Appellate Rules 209 and 517, under which "[c]ounsel appointed to represent a defendant in the trial court . . . shall remain as appointed counsel throughout an appeal at public expense . . . and shall not be permitted to withdraw except upon the grounds authorized," and former Disciplinary Rule 2-110(A)(2) of the Code of Professional Responsibility, which then provided that "a lawyer shall not withdraw . . . until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client").

to having the appeal reinstated.[19]  We adopted this approach for several reasons.  First, we noted that "an attorney who incompetently fails to file a notice of appeal deprives the client of the right to an appeal, not just the right to a successful appeal."[20]  Second, we observed that requiring a showing of prejudice before permitting an appeal to proceed would necessarily entail almost the same analysis that would be required in simply deciding the appeal on its merits.  Finally, we pointed out that requiring a particularized showing of prejudice "would be of questionable value, since it would impose on the trial court the essentially circular task of reviewing the propriety of its own legal decisions."[21]  We also noted that the federal courts were nearly unanimous in concluding that a showing of traditional prejudice — *i.e.*, that the appeal would have been successful — was not required under these circumstances.[22]

Five years later, in *Roe v. Flores-Ortega*, the United States Supreme Court addressed this same issue in a case where the criminal defendant had *not* given a clear directive to file an appeal.[23]  At the outset, the Supreme Court identified the two ends of the spectrum defining defense counsel's obligation to file an appeal:  At one end, a defense attorney "acts in a manner that is professionally unreasonable" if the attorney fails to file an appeal after being expressly instructed by the defendant to do so.[24]  At the

---

[19]  *Id.* at 1208.

[20]  *Id.*

[21]  *Id.*

[22]  *Id.* (collecting cases).

[23]  *Roe v. Flores-Ortega*, 528 U.S. 470 (2000).

[24]  *Id.* at 477.

other end, an attorney does not act incompetently when the attorney fails to file a notice of appeal after being explicitly told *not* to do so by the defendant.[25]

The Court then addressed the middle-ground situation in which the defendant has not affirmatively indicated, one way or another, whether the defendant wishes to appeal. In that situation, the Court stated, it is necessary to examine an antecedent question — *i.e.*, whether the attorney unreasonably failed to *consult* with the defendant about their right to appeal.[26] The Court acknowledged that, because the decision to appeal rests with the defendant, "the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal."[27] But the Court declined to adopt a bright-line rule that, as a constitutional matter, every failure to consult with the defendant about an appeal constitutes per se deficient performance.[28]

Rather, the Court held that a defense attorney violates a defendant's right to competent counsel if the attorney fails to consult with the defendant about the possibility of filing an appeal in one of two circumstances: (1) when the defendant has reasonably demonstrated to counsel an interest in appealing, or (2) when there are objective reasons to think that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal).[29] Ultimately, the Court held that the question of whether counsel performed deficiently must be based on "all the information

---

[25] *Id.*

[26] *Id.* at 478.

[27] *Id.* at 479.

[28] *Id.* at 478-80.

[29] *Id.* at 480.

counsel knew or should have known," and that the touchstone of the analysis is reasonableness.[30]

The Court further held that if a defendant establishes that their attorney was incompetent in failing to file a notice of appeal as directed, or in failing to meaningfully consult with the defendant as the circumstances required, the defendant is not required to show that the appeal would have been meritorious. Instead, in order to restore the right to appeal, the defendant need only show that, but for the attorney's incompetence, the defendant would have timely filed the appeal.[31] In other words, the defendant need only show that they would have pursued the proceeding if properly advised, not that the proceeding itself would have been successful.

These dual holdings — that an attorney has a duty to meaningfully consult with a defendant about their appellate rights as the circumstances require and that prejudice is shown by establishing that, but for this incompetence, a timely appeal would have been filed — were later applied and extended by this Court.

---

[30] *Id.* at 480-81. The Court also expressed its belief that, in the vast majority of cases, "courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find . . . that counsel had a duty to consult with the defendant about an appeal." *Id.* at 481.

[31] *Id.* at 484. This is sometimes called "presumed prejudice" — *i.e.*, the defendant is presumed to have suffered an injury from the failure to file the appeal, and the defendant need not show that any particular issue would have succeeded on the merits. But this phrase does not mean the defendant need not show *any* prejudice. The defendant must still show that but for counsel's deficient failure to consult with them about an appeal, the defendant would have timely appealed. That is, prejudice in this context is defined as the deprivation of a proceeding, rather than the deprivation of a *successful* proceeding. As the Supreme Court said in *Flores-Ortega*, "If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Id.*

In *Harvey v. State*, we recognized that a defense attorney is obligated, at the conclusion of a criminal case in the trial court, to meaningfully consult with a convicted client about the possibility of pursuing an appeal in either of two situations: "(1) when the defendant has given the attorney a reasonable indication that they are interested in appealing, or (2) when there are objective reasons to think that a rational person in the defendant's position might want to appeal."[32] We held that this duty to meaningfully consult about the possibility of filing an appeal and the likelihood of success applies to both court-appointed and retained counsel.[33] Finally, we held that if the defendant decides to pursue an appeal of their conviction, the attorney — whether court-appointed or private — must take steps to preserve the defendant's right to appeal if the defendant does not yet have a substitute attorney to take the needed steps.[34]

We have extended this duty to court-appointed attorneys who represent a criminal defendant in post-conviction relief proceedings in the trial court.[35] In Alaska, regardless of whether a direct appeal is filed, a criminal defendant may file a collateral attack on their conviction, initiating a "post-conviction relief" proceeding in the original trial court of conviction. Claims that could have been raised on direct appeal generally cannot be raised in an application for post-conviction relief.[36] But certain claims can only be raised for the first time in an application for post-conviction relief — for

---

[32] *Harvey v. State*, 285 P.3d 295, 305 (Alaska App. 2012) (citing *Flores-Ortega*, 528 U.S. at 480). As we noted earlier, we declined to decide in *Harvey* whether a criminal defense attorney has a duty to consult with a convicted client about the possibility of filing an appeal outside of these two contexts. *Id.* at 297.

[33] *Id.* at 306.

[34] *Id.* at 297, 302, 306.

[35] *See Wassilie v. State*, 331 P.3d 1285, 1289 (Alaska App. 2014).

[36] AS 12.72.020(a)(2).

example, most claims of ineffective assistance of counsel,[37] or claims of newly discovered evidence after the window for filing a motion for a new trial in the original criminal case has expired.[38]

This Court has appellate jurisdiction over post-conviction relief proceedings. Thus, if a post-conviction relief applicant (*i.e.*, the criminal defendant) is unsuccessful in the trial court, the applicant has the right to appeal that decision to this Court. Like a direct appeal, an appeal from a final post-conviction relief judgment is a "matter of right," in that the applicant has the right to a decision on the merits in this Court. And in Alaska, indigent criminal defendants are entitled to the assistance of court-appointed counsel to litigate a first application for post-conviction relief and any appeal from the trial court's decision on that application.[39]

---

[37] *See* AS 12.72.010(9); *Barry v. State*, 675 P.2d 1292, 1295-96 (Alaska App. 1984) (holding that, because the trial record is ordinarily insufficient to allow an appellate court to resolve an ineffective assistance of counsel claim on direct appeal, ineffective assistance claims will generally only be addressed on appeal when the claims have been litigated in a new trial motion or in an application for post-conviction relief).

[38] *See* Alaska R. Crim. P. 33(c) ("A motion for a new trial based on the ground of newly discovered evidence may be made only before or within 180 days after final judgment[.]"); AS 12.72.010(4) (allowing post-conviction relief claims based on material facts not previously presented and heard); Alaska R. Crim. P. 35.1(a)(4) (same).

[39] AS 18.85.100(a), (c); *Grinols v. State*, 74 P.3d 889, 894 (Alaska 2003) (holding that the due process clause of the Alaska Constitution — article I, section 7 — guarantees the right to counsel in a first application for post-conviction relief); *Wassilie*, 331 P.3d at 1289-91 (recognizing that an indigent defendant is entitled to court-appointed counsel when litigating an appeal from the trial court's decision on a first post-conviction relief application, including a dismissal based on a certificate of no arguable merit). We note that there is no federal constitutional right to counsel in a post-conviction collateral proceeding. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

In *Wassilie v. State*, we addressed a particular post-conviction relief situation — where court-appointed post-conviction relief counsel files a certificate of no arguable merit as to the defendant's application.[40] We held that even an attorney who files a certificate of no merit has an obligation "to ascertain [the defendant's] desires regarding a potential appeal, and to take the steps necessary to preserve [the] right of appeal if that is what [the defendant] wishe[s] to do."[41] These final obligations are "components of the attorney's duty as the defendant's representative in the trial court — analogous to the duty we recognized in *Harvey v. State* for trial attorneys who represent defendants in criminal prosecutions."[42] We recognized that there were distinctions between the original criminal prosecution and the post-conviction relief context, but we ultimately concluded that "these distinctions [did] not call for a different result" in post-conviction relief cases.[43]

In sum, under *Broeckel*, *Harvey*, and *Wassilie*, a criminal defendant in Alaska has the right to appeal a final criminal or post-conviction relief judgment, and a criminal defendant who is indigent is entitled to court-appointed counsel — and the effective assistance of that counsel — in pursuing a direct appeal or an appeal from a judgment on a first post-conviction relief application. If a defendant's attorney unreasonably fails to consult with the defendant regarding the appeal, and the defendant

---

[40] *Wassilie*, 331 P.3d at 1286; *see also* Alaska R. Crim. P. 35.1(e)(2) (requiring court-appointed post-conviction relief counsel to pursue one of three options when representing a post-conviction relief applicant: file an amended application for post-conviction relief, rest on the claims raised in the defendant's *pro se* application, or file a certificate of no arguable merit, certifying that the defendant has no colorable claims for relief).

[41] *Wassilie*, 331 P.3d at 1288.

[42] *Id.* at 1290.

[43] *Id.* at 1288, 1290-91.

can show a reasonable possibility that the attorney's deficient representation was the but-for cause of their failure to appeal, then the defendant is entitled to reinstatement of the appeal, regardless of a showing of merit on any of the underlying claims of error.

*Why we conclude that an appellate attorney has a duty to consult with their client regarding the possibility of filing a petition for hearing, and that the failure to consult can form the basis for an ineffective assistance of counsel claim*

As we noted earlier, if a criminal defendant's appeal is unsuccessful in this Court, the defendant may seek review in the Alaska Supreme Court by filing a petition for hearing — *i.e.*, a pleading challenging this Court's ruling on one or more issues and requesting the supreme court's review.[44] Unlike an appeal in this Court, the supreme court's decision to grant or deny a petition for hearing — *i.e.*, its decision to review the merits of a case — is discretionary on the part of that court.[45] That is, a party has no right to a decision on the merits. However, a party has the right to request such review through a petition for hearing from a final decision of this Court.[46]

Thus, the question we must confront is whether, and under what circumstances, an appellate attorney before this Court has an obligation to inform their client of an adverse final decision and the option of filing a petition for hearing in the supreme court. In short, we must decide whether to extend the rule of *Roe v. Flores-Ortega* and *Harvey v. State* to the petition for hearing context.

_____

[44] Alaska R. App. P. 301-05.

[45] *Compare* AS 22.05.010(d) & AS 22.07.030, *with* AS 22.07.020(d).

[46] *See* AS 22.07.030 (providing that "[a] party may apply to the supreme court for review of a final decision of the court of appeals"); Alaska R. App. P. 302(a)(1) (providing that "[a] petition for hearing may be filed in the supreme court with respect to any final decision of the court of appeals").

As an initial matter, we note that an appellant's attorney has an *ethical* duty to confer with their client regarding the status of the appeal and doing so is part of their duties to their client in this Court.[47] Under Alaska Professional Conduct Rule 1.4(a), "A lawyer shall keep a client reasonably informed about the status of a matter undertaken on the client's behalf[.]" The lawyer must also "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."[48] These rules clearly require an attorney to inform a criminal appellant when this Court renders a decision — and to discuss the option of filing a petition for hearing to the supreme court.[49]

We conclude that the failure to fulfill this ethical duty can also amount to ineffective assistance of counsel. We reach this conclusion for several reasons.

First, the petition for hearing is an important part of the appellate process in Alaska, and it serves as the final opportunity in state court for the defendant to have their claims heard. Under the Alaska Appellate Rules, the appellate process concludes only after a petition for hearing has been disposed of, or the time period for filing a

---

[47] *Cf. Wassilie*, 331 P.3d at 1288-90 (recognizing that, under Alaska Professional Conduct Rule 1.16, an attorney representing a post-conviction relief applicant has a duty, before terminating representation, to ascertain whether the applicant wishes to appeal and ensure that, if necessary, the right to appeal is preserved — and that doing so is a "component[] of the attorney's duty as the defendant's representative in the trial court — analogous to the duty we recognized in *Harvey v. State* for trial attorneys who represent defendants in criminal prosecutions").

[48] Alaska R. Prof. Conduct 1.4(a).

[49] *See also ABA Standards for Criminal Justice: Defense Function* § 4-9.2(i) (4th ed. 2017) (providing that, if further appellate review is possible, appellate counsel should advise of further options and deadlines).

petition for hearing has passed.[50] That is, in both the direct appeal and post-conviction relief contexts, the petition for hearing is a continuation — and ultimately the completion — of the state appellate process.[51] As the Hawai'i Supreme Court has explained, review before a state's highest court "provides the last pathway to ensure that the defendant's substantial rights were observed during the trial and sentencing phases of the proceedings."[52]

---

[50] *See* Alaska R. App. P. 507(b), (c), (d) (providing that the judgment of the appellate court takes effect and full jurisdiction over the case returns to the trial court on the day after the time for filing a petition for hearing expires, on the day after the petition for hearing is denied, or, in a case decided by the supreme court, on the day after the time for filing a petition for rehearing expires or on the day after the supreme court disposes of the case on rehearing).

[51] *Cf. Kargus v. State*, 169 P.3d 307, 313 (Kan. 2007) (recognizing that "while the determination of whether review will be granted is discretionary with th[e] [supreme] court, the right to petition for review is not qualified or contingent. It is a right which is a part of 'the appeal' and one of the stages in the proceedings to which the right to counsel attaches"); *People v. Valdez*, 789 P.2d 406, 408 (Colo. 1990) (noting that, although the Colorado Supreme Court had absolute discretion whether to grant or deny a petition for discretionary review, such a petition was "an application of right" — *i.e.*, the criminal defendant "had a right to file his application for certiorari review" and the concomitant right to the assistance of counsel in preparing the petition).

[52] *State v. Uchima*, 464 P.3d 852, 863 (Haw. 2020). The Alaska Supreme Court has decided questions of law involving substantial rights on petitions for hearing in both direct criminal appeals and post-conviction relief cases. *See, e.g., Young v. State*, 374 P.3d 395, 399 (Alaska 2016) (on defendant's petition for hearing in direct appeal, adopting new test for evaluating admissibility of out-of-court eyewitness identifications); *Adams v. State*, 261 P.3d 758, 764 (Alaska 2011) (on defendant's petition for hearing in direct appeal, deciding the plain error standard); *Stone v. State*, 255 P.3d 979, 980-81 (Alaska 2011) (on defendant's petition for hearing in post-conviction relief case, holding that defendant had right to require court-appointed counsel to file a petition for discretionary review of sentence); *Gudmundson v. State*, 822 P.2d 1328, 1330-31 (Alaska 1991) (on defendant's petition for hearing in post-conviction relief case, holding that defendant's claim challenging a statute's

(continued...)

Second, as a practical matter, there is a short time frame for filing a petition for hearing; any petition for hearing must be filed within thirty days of this Court's decision (fifteen days at the time of Mack's appeals).[53] Thus, like a defendant seeking to file an initial appeal, a would-be petitioner "needs effective representation and advice in [a] relatively short period" and "it is often impossible or impracticable for the defendant to obtain substitute counsel, and to meaningfully consult with the new attorney, within this short time frame."[54] To deprive a criminal defendant of effective consultation at this stage would be inconsistent with the fair and efficient administration of justice.[55]

Third, other jurisdictions have held that an attorney in a criminal appeal has an obligation to inform their client of the right to seek further review in the state's highest court and that the failure to do so can form the basis of an ineffective assistance

---

[52] (...continued) constitutionality was "jurisdictional in character" and could be brought at any time).

[53] Alaska R. App. P. 303(a); *see* Supreme Court Order No. 1823 (dated Apr. 2, 2014; eff. Oct. 15, 2014) (changing deadline for filing a petition for hearing from fifteen days to thirty days).

[54] *Wassilie v. State*, 331 P.3d 1285, 1288 (Alaska App. 2014) (citing *Harvey v. State*, 285 P.3d 295, 304 (Alaska App. 2012)).

[55] *See Grinols v. State*, 10 P.3d 600, 618 (Alaska App. 2000), *aff'd in part*, 74 P.3d 889, 895 (Alaska 2003) ("[I]t would be absurd [for a defendant] to have the right to appointed counsel who is not required to be competent." (quoting *Iovieno v. Comm'r of Corr.*, 699 A.2d 1003, 1010 (Conn. 1997))); *see also Risher v. State*, 523 P.2d 421, 423 (Alaska 1974) ("The assistance must be 'effective' to be of any value.") (citations omitted). *Cf. Uchima*, 464 P.3d at 863 (noting that discretionary review before the state's highest court "is an oftentimes complicated part of the criminal process such that not providing a defendant the assistance of counsel would restrict the defendant's ability to be meaningfully heard") (citations omitted).

claim.[56] This includes jurisdictions where there is no further right to the assistance of counsel in actually filing the petition.[57] Particularly in Alaska — where appointed counsel continues to represent an indigent defendant on a petition for hearing[58] — an

---

[56] *See, e.g.*, *People v. Valdez*, 789 P.2d 406, 407-08 (Colo. 1990); *Kargus v. State*, 169 P.3d 307, 313 (Kan. 2007); *Ex parte Owens*, 206 S.W.3d 670, 673 (Tex. Crim. App. 2006); *Tolliver v. State*, 629 S.W.2d 913, 915 (Tenn. Crim. App. 1981); *Dodson v. Dir. of Dep't of Corr.*, 355 S.E.2d 573, 577 (Va. 1987); *State v. Mosley*, 307 N.W.2d 200, 217-18 (Wis. 1981).

[57] *See, e.g.*, *Ex parte Owens*, 206 S.W.3d at 673 (holding that, while an attorney need not prepare a petition for discretionary review or advise on the merits of seeking such review, the appellate attorney "must not neglect to timely inform his client that he has the right to seek such review," even in instances where the attorney filed an *Anders* brief, *i.e.*, a brief explaining why there are no arguable claims, in the intermediate appellate court); *Mosley*, 307 N.W.2d at 217-18 (holding that, if appointed counsel determines that a discretionary petition to the state supreme court has no arguable merit, the attorney need not file the petition but must still explain the reasons to the defendant to assist the defendant in preparing a list of *pro se* reasons for review); *Tolliver*, 629 S.W.2d at 915 (holding that, even though the attorney has no obligation to pursue discretionary appellate review on the defendant's behalf, the attorney must alert the defendant to the possibility of seeking discretionary review and "failure of . . . counsel to so advise [the defendant] of this right may result in a finding that his counsel ineffectively represented him").

[58] *See* Alaska R. App. P. 209(b)(4); *Latham v. Anchorage*, 165 P.3d 663, 664 (Alaska App. 2007) (discussing AS 18.85.100(a)). The superior court in this case incorrectly interpreted the language of AS 18.85.100(c) as precluding the appointment of counsel on a "petition for hearing" in a post-conviction relief case. In 1995, the legislature amended AS 18.85.100(c) to establish certain limits on the right to representation in post-conviction relief cases, precluding the appointment of counsel for purposes of bringing "a petition for review or certiorari from an appellate court ruling on an application for post-conviction relief[.]" AS 18.85.100(c), *enacted by* SLA 1995, ch. 79, § 10. The superior court interpreted this language as including petitions for hearing.

But a "petition for hearing" is distinct from a "petition for review." A "petition for hearing" is a request for review of a final appellate court decision — *i.e.*, a request filed in the next highest appellate court (generally, the supreme court) following a final decision

(continued...)

attorney's duties to their client in this Court include the obligation to inform them of an adverse final decision and the right to seek review of that decision in the supreme court.

> *What standard of ineffective assistance of counsel applies when a defendant claims that appellate counsel failed to inform them of the right to file a petition for hearing*

The next question is what *standard* of ineffective assistance of counsel — *i.e.*, what standard of competence and prejudice — applies to the type of claims raised by Mack.

The Kansas Supreme Court addressed these questions in a decision we find persuasive. In *Kargus v. State*, the Kansas court considered a situation at one of the extremes addressed in *Flores-Ortega*: a criminal defendant claimed that, after the Kansas Court of Appeals affirmed his convictions on direct appeal, his appellate counsel failed to file a petition for discretionary review in the Kansas Supreme Court, despite his request that a petition be filed.[59] (In Kansas, this discretionary petition is called a "petition for review.") The defendant argued that the failure to file the petition constituted ineffective assistance of counsel entitling him to reinstatement of his right to

---

[58] (...continued)
in the intermediate appellate court. A "petition for review" is a request for interlocutory review, the purpose of which is to challenge a particular court ruling *prior* to final judgment. *Compare* Alaska R. App. P. 302, *with* Alaska R. App. P. 402. The legislative history of the enactment of AS 18.85.100(c) shows that the legislature specifically rejected a version of the bill that would have eliminated the right to representation on "a petition for hearing from an appellate court ruling on an application for post-conviction relief[.]" *See* House Bill 201, 19th Leg., 1st Sess., at § 10 (as introduced on Feb. 27, 1995).

[59] *Kargus v. State*, 169 P.3d 307, 309 (Kan. 2007).

file the petition. The defendant argued that, as in *Flores-Ortega*, he did not need to show that he would have prevailed on the petition itself.[60]

The Kansas court held that a criminal defendant is entitled to the appointment of counsel in filing (or defending) a petition for discretionary review to the supreme court.[61] The court further held that the "statutory right to counsel includes the right to effective assistance of counsel."[62]

The court therefore confronted the question — germane to our decision here — of what standard of ineffective assistance of counsel applies when the complaint is that counsel failed to file a discretionary petition for supreme court review. The Kansas court compared the federal test for ineffective assistance of counsel claims — *i.e.*, the "*Strickland*" test — with the test that applies specifically to ineffectiveness claims in the context of failing to file or consult with a criminal defendant regarding the right to appeal — *i.e.*, the *Flores-Ortega* test.[63]

To establish a claim of ineffective assistance of counsel under *Strickland v. Washington*, a criminal defendant must show that (1) the attorney's performance fell below an objective standard of reasonableness (the performance prong); and (2) but for the attorney's incompetent performance, there is a reasonable probability that the

---

[60] *Id.* at 309-10.

[61] *Id.* at 312-13. The court added, however, that, even if there were no right to counsel to file for discretionary review, the defendant's appellate attorney would still have at least "the obligation merely to inform the defendant of the fact that his or her conviction ha[d] been affirmed by the Court of Appeals and that the defendant could pursue discretionary review on his or her own." *Id.*

[62] *Id.* at 313.

[63] *Id.* at 313-16.

outcome of the proceedings would have been different (the prejudice prong).[64] (The general test in Alaska — set out in *Risher v. State* — is similar, but has a lower prejudice threshold, requiring a criminal defendant to show only that there is a "reasonable possibility" that the attorney's incompetence contributed to the conviction.[65])

As we noted earlier, however, under *Flores-Ortega*, a defendant need not show that the appeal itself would have resulted in a reversal of their conviction or sentence; a defendant need only show that, but for the attorney's deficient conduct — *i.e.*, the failure to consult or timely file the appeal — the defendant would have filed an appeal.

After addressing each standard, the Kansas Supreme Court extended *Flores-Ortega* to "petitions for review" — the type of discretionary petitions that are called "petitions for hearing" in Alaska.[66] The court concluded that *Flores-Ortega* set out the appropriate standard because — like the failure to advise a criminal defendant regarding the initial right to file an appeal — the failure to advise on, or timely file, a discretionary petition involves the loss of an entire proceeding.[67] That is, while *Strickland* applies to an attorney's deficient performance *during the course of* a proceeding, *Flores-Ortega* applies "when counsel's performance causes a *forfeiture* of

---

[64] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

[65] *State v. Steffensen*, 902 P.2d 340, 342 (Alaska App. 1995) (citing *Risher v. State*, 523 P.2d 421, 425 (Alaska 1974)).

[66] *Kargus*, 169 P.3d at 320.

[67] *Id.* at 315-16 (comparing *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000), with *Strickland*, 466 U.S. at 687).

a proceeding" — that is, when the defendant is deprived of *any* assistance in the proceeding.[68]

The Kansas court then set out the standard for evaluating a claim that counsel was ineffective for failing to file a petition for discretionary review following an adverse decision in the intermediate appellate court — a standard that reflects the *Flores-Ortega* framework:

> (1) If a defendant has requested that a petition for review be filed and the petition was not filed, the appellate attorney provided ineffective assistance; (2) a defendant who explicitly tells his or her attorney not to file a petition for review cannot later complain that, by following instructions, counsel performed deficiently; (3) in other situations, such as where counsel has not consulted with a defendant or a defendant's directions are unclear, the defendant must show (a) counsel's representation fell below an objective standard of reasonableness, considering all the circumstances; and (b) the defendant would have directed the filing of the petition for review.[69]

The court further held that, consistent with *Flores-Ortega*, the defendant did not need to show that the petition would have been granted or that, after consideration of the petition, the supreme court would have granted relief to the defendant.[70]

We conclude that the test set out by the Kansas Supreme Court is consistent with our case law, and we adopt it. We accordingly extend the rule of *Flores-Ortega* to petitions for hearing.

---

[68]   *Id.* at 314, 316.

[69]   *Id.* at 320.

[70]   *Id.* at 318, 320.

In particular, as we previously discussed, an attorney before this Court has an obligation to inform a client about an unsuccessful appeal and the right to file a petition for hearing in the supreme court. The failure to do so can form the basis of an ineffective assistance of counsel claim.

But in the context of the third situation discussed in *Kargus* — *i.e.*, where counsel has not consulted with a defendant or the defendant's directions are unclear — counsel's failure to adequately inform a defendant about the right to file a petition for hearing is not automatically ineffective as a constitutional matter. Rather, "where counsel has not consulted with a defendant or a defendant's directions are unclear, the defendant must show [that] counsel's representation fell below an objective standard of reasonableness, considering all the circumstances[.]"[71] Generally, this can be demonstrated through evidence establishing one of the two prongs set out in *Flores-Ortega* and *Harvey*: either that (1) the defendant has given the attorney a reasonable indication that they are interested in pursuing further review if they lose in this Court, or (2) there are objective reasons to think that a rational person in the defendant's position might want to file a petition for hearing.[72] (We nonetheless echo the advisement by the Kansas Supreme Court that best practice is for an appellate attorney to consult with their client regarding a petition for hearing in all situations, regardless of whether the failure to do so would constitute ineffective assistance of counsel as a constitutional matter.[73])

_____

[71] *Id.* at 320.

[72] *Flores-Ortega*, 528 U.S. at 480; *Harvey v. State*, 285 P.3d 295, 305 (Alaska App. 2012).

[73] *Kargus*, 169 P.3d at 320. *Cf. Flores-Ortega*, 528 U.S. at 479 (recognizing that, in the context of a trial attorney's duty to a criminal defendant, "the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal," even if not every failure to do so constitutes ineffective assistance of counsel as a constitutional

(continued...)

If the defendant establishes that their counsel's representation was deficient, the defendant must further show a reasonable possibility that, but for this deficient performance, the defendant would have directed the filing of a petition for hearing.[74] The defendant need not show that the petition itself would have resulted in a successful outcome.

In Mack's case, the superior court required Mack to prove that any petition would have been successful. The court declined to presume prejudice based largely on the fact that petitions for hearing are considered "second-tier" appellate review.

But the same concerns raised in *Broeckel* apply equally in the context of petitions for hearing.[75] When an attorney unreasonably fails to alert a defendant to the availability of further review in the supreme court, and as a result of this deficiency, the defendant fails to file a petition for hearing, the defendant has been deprived of an entire proceeding. Moreover, requiring that a defendant show that their petition for hearing would be successful as a condition of allowing an untimely petition would require courts to engage in almost the same analysis that would be required in deciding the petition for hearing. And it would impose on this Court, and the superior court, the "essentially

---

[73] (...continued)
matter).

[74] *See Flores-Ortega*, 528 U.S. at 484; *Kargus*, 169 P.3d at 320.

[75] *See Kargus*, 169 P.3d at 312-13, 316 (recognizing the distinction between the first-tier appellate stage, where the right to counsel is constitutional, and the second-tier discretionary review stage, where the right to counsel under Kansas law is statutory, but concluding that presumptive prejudice is the more appropriate standard because of the loss of an entire proceeding).

circular task of reviewing the propriety of [their] own legal decisions."[76] Identical concerns about judicial efficiency therefore apply in this context.

To sum up:  We hold that an attorney representing a client in this Court has an obligation to consult with their client about an adverse decision rendered by this Court and the right to file a petition for hearing seeking further review in the supreme court. If a defendant (like Mack) argues in a post-conviction relief proceeding that their appellate attorney failed to inform them about the right to file a petition for hearing, the defendant should be permitted to file an untimely petition for hearing, without proving the merits of the underlying issues, if three conditions are met:

> (1) the post-conviction relief application is deemed to be timely,
>
> (2) the defendant establishes that their appellate attorney's failure to consult with them regarding the petition for hearing to the supreme court was unreasonable under the totality of the circumstances, and
>
> (3) the defendant establishes a reasonable possibility that their attorney's unreasonable failure to consult with them was the but-for cause of their failure to file a petition for hearing.[77]

*A more detailed look at the facts of Mack's case and why we remand for further proceedings*

We now return to the facts of this case.

---

[76]  *Broeckel v. State*, 900 P.2d 1205, 1208 (Alaska App. 1995).

[77]  We express no opinion regarding the standard that should govern the supreme court's acceptance of a late-filed petition for hearing — *i.e.*, a petition that is filed directly in the supreme court outside the 30-day deadline, but generally still within the relatively immediate aftermath of a decision in this Court.  *See* Alaska R. App. P. 303(a) (setting a 30-day deadline for filing a petition for hearing in the supreme court).

As we noted earlier, Mack filed a second application for post-conviction relief, which is the genesis of the current appeal. In this application, Mack alleged that his appellate attorney in his first post-conviction relief action (Assistant Public Advocate Dan Bair) neglected to file a petition for hearing or at least inform him of that option following his unsuccessful post-conviction relief appeal in this Court. Mack also raised a "layered" claim for relief. In this layered claim, Mack alleged that his prior post-conviction relief attorney in the superior court (Michael Smith) incompetently failed to include, as one of the claims for post-conviction relief, that Mack's direct appeal attorney (Randall Cavanaugh) neglected to file a petition for hearing, or at least inform Mack of that option following his unsuccessful direct appeal in this Court.

Mack argued that both appellate attorneys were ineffective, pointing out that their inaction precluded him from further pursuing his claims and seeking habeas corpus relief in federal court (because he had failed to exhaust his state remedies).[78] Mack argued that, to establish prejudice, he was not required to show that he would have prevailed on the issue(s) that his attorney could have raised in a petition for hearing; rather, he needed to show only that he would have filed a petition for hearing had he been properly advised of his right to do so. Mack alleged that he met this standard, and he therefore asked the superior court to restore his right to file petitions for hearing in both of his prior appeals.

With his application, Mack provided the superior court with affidavits from himself and the three attorneys around whom Mack's claims were centered.

Dan Bair represented Mack on appeal of the denial of his first post-conviction relief application. In his affidavit, Bair stated that within a week of this Court's decision on appeal, Bair sent a copy of our decision to Mack, along with a letter.

_____

[78] *See* 28 U.S.C. § 2254(b)(1).

In the letter, Bair briefly discussed his opinion of this Court's resolution of Mack's post-conviction appeal, noting that the governing case law on the issue was not favorable.

Bair's letter, which is in the record before us, did not include any reference to the possibility of filing a petition for hearing in the Alaska Supreme Court or any mention of the then fifteen-day deadline. Instead, Bair advised Mack about pursuing a "*Grinols* action" — that is, a successive post-conviction relief action that alleges that the defendant's first post-conviction relief attorney provided ineffective assistance of counsel. Bair noted in the letter: "With regard to your *Grinols* issue, now that the Court of Appeals has issued its decision, the clock has begun on your *Grinols* action. I would urge you to file your *Grinols* [application] now — if you have not done so." (He did not identify the issues that he thought Mack might wish to raise in a *Grinols* application.)

In his later affidavit, Bair acknowledged that neither his letter nor his handwritten notes of his conversations with Mack contained any reference to a petition for hearing. He also attested that he had no memory of discussing the issue with Mack. Bair stated that he "had no tactical reason for not informing Mr. Mack what a petition for hearing was or his right to proceed with one," as he viewed the decision as belonging to Mack.

(Another indication that Bair did not inform Mack about his right to file a petition for hearing is the fact that Bair misadvised Mack about the running of the "clock" on Mack's *Grinols* application. There is a one-year time period for filing a *Grinols* application. This period does not begin running until the decision on the prior application for post-conviction relief is "final under the Alaska Rules of Appellate Procedure"[79] — and a decision is not final under the Alaska Appellate Rules until the

---

[79] AS 12.72.025.

time for filing a petition for hearing has run.[80]  Thus, the time period for filing a *Grinols* application did not begin with the issuance of this Court's decision, as Bair's letter stated; it started only after the deadline for filing a petition for hearing in the supreme court had passed.  Bair's letter made no reference to this additional period.)

Michael Smith, on contract with the Office of Public Advocacy, represented Mack in his first application for post-conviction relief in the superior court.  In his affidavit, Smith stated that he did not recall whether he was aware that Randall Cavanaugh (Mack's attorney on direct appeal) had not filed a petition for hearing.  He also stated that he "was aware that filing a petition for hearing to the Alaska Supreme Court is necessary to preserve issues for a potential federal habeas corpus claim" and that he "did not discuss with Mr. Mack the fact that, due to Cavanaugh's failure to file a petition for hearing, Mr. Mack was effectively barred from litigating his case in federal court."

Randall Cavanaugh provided an affidavit stating that he could not say "with absolute[] certainty" that he spoke with Mack about "a petition for review [*sic*][81] to the Alaska Supreme Court given the passage [of] time and lack of materials to refresh [his] recollection."  He did note that he typically advises his clients "regarding their petition rights," but he believed that the Office of Public Advocacy, which contracted with Cavanaugh to represent Mack on direct appeal, was not paying for "discretionary

---

[80]  Alaska R. App. P. 507(d).  At the time of Mack's post-conviction relief appeal, the rules governing the return of jurisdiction to the trial court following an appeal were set out in Alaska Appellate Rules 507 and 512.  *See* Supreme Court Order No. 1973 (dated Aug. 18, 2021; eff. Apr. 15, 2022).

[81]  As discussed previously, the phrases "petition for review" and "petition for hearing" are terms of art and distinct from one another under the Alaska Appellate Rules.  A "petition for hearing" is a request for review of a final appellate court decision, while a "petition for review" is a request for interlocutory review.

actions" at the time. In contrast, Cavanaugh did recall discussing with Mack the option of filing a post-conviction relief application.

For his part, Mack maintained that he "wanted to do everything possible in state and federal court" to challenge his conviction and that he never told an attorney to forgo any legal option. Specifically, Mack stated that he did not remember whether he had discussed with Cavanaugh or Bair the option of filing an "appeal" in the supreme court, but had he known he could "have appealed [each] case further," he would have done so.[82]

The State filed a motion to dismiss Mack's subsequent post-conviction relief application, arguing that Mack did not have a right to counsel to file a "second-tier, discretionary appeal" like a petition for hearing. The State also argued that Mack failed to demonstrate that he was prejudiced by the absence of an opportunity to file a petition for hearing because he did not show that he could have prevailed on any appellate issues or federal habeas litigation if a petition for hearing had been filed.

Without holding a hearing, the superior court dismissed Mack's application. The court agreed with Mack that he was entitled to "meaningful consultation" from his appellate attorneys regarding his right to file a petition for hearing in the supreme court — that his attorneys had a "duty to counsel" him "as to appellate procedure." But the

---

[82] The State takes Mack to task for stating that he would have "appealed the case" to the supreme court, rather than file a "petition for hearing," noting that a criminal defendant has no right to "appeal" from this Court to the supreme court. The State asserts that "Mack offered no evidence that he would have filed a petition for hearing (*i.e.*, as opposed to an 'appeal')." But this argument elevates form over substance and suggests that an indigent defendant's lack of understanding of appellate terminology is dispositive, when it is otherwise clear in the context of Mack's affidavit — and the larger issues being litigated — that Mack was asserting that he would have pursued a further *remedy* in the supreme court had he known of that option. Indeed, we note that, in its order, the superior court made the same semantic mistake as Mack.

court nonetheless concluded either that this obligation had been fulfilled or that Mack could not show prejudice.

More specifically, with respect to Bair — Mack's attorney in his post-conviction relief appeal — the court found that Bair *did* meaningfully consult with Mack about his appellate rights when he sent Mack a letter following his unsuccessful appeal in this Court, telling Mack that he could file a *Grinols* action.  With respect to Cavanaugh — Mack's attorney on direct appeal — the court found that while Mack had set forth a *prima facie* case that Cavanaugh failed to meaningfully consult with him about his right to file a petition for hearing, Mack did not show a reasonable possibility that he would have prevailed on the issues that could have been raised in the petition for hearing in his direct appeal.

### *Our resolution of Mack's claim against his appellate counsel in his first post-conviction relief application*

We disagree with the superior court that Mack failed to set out a *prima facie* case of ineffective assistance as to Bair, his first post-conviction appellate counsel.  In Bair's letter (sent in the days following the issuance of this Court's decision), Bair advised Mack about a pursuing a "*Grinols* action":  "With regard to your *Grinols* issue, now that the Court of Appeals has issued its decision, the clock has begun on your *Grinols* action.  I would urge you to file your *Grinols* [application] now — if you have not done so."  The superior court believed that Bair's statements reflected a "tactical choice" to seek post-conviction relief rather than relief through a petition for hearing.  But this finding is flawed, both as a matter of fact and as a matter of law.

First, as a factual matter, Bair's letter does not mention the possibility of filing a petition for hearing.  Indeed, in his affidavit, Bair acknowledged that he likely did not advise Mack of his right to file a petition for hearing — and stated that he had no

tactical reason for failing to do so. In short, there is no indication in the current record that Bair even considered a petition for hearing.

The State argues that Mack failed to establish that Bair did not discuss with him the possibility of filing a petition for hearing. The State points to the attorney's lack of memory of such discussions as evidence that the discussions *may* have happened. But in doing so, the State mistakenly relies on the "clear and convincing evidence" standard of proof. At this stage in the proceedings — where the superior court was determining whether Mack had established a *prima facie* case for relief — the superior court was obliged to presume the truth of any well-pleaded assertions of fact, including Bair's assertion that he likely failed to advise Mack of his right to file a petition for hearing and had no tactical reason for not doing so.[83] Any dispute of material fact must be decided by the superior court after holding an evidentiary hearing.[84]

Second, as a legal matter, the court's conclusion that Bair's decision was tactical is incorrect. A petition for hearing and a post-conviction relief application are distinct procedural vehicles: a criminal defendant need not forgo one in order to pursue the other, and many, if not most, defendants pursue both. Indeed, in many circumstances, a defendant *must* pursue both to preserve all of their claims for federal habeas corpus review.

And as we are about to explain, we conclude that the decision whether to file a petition for hearing is not a "tactical" decision for the attorney but rather a decision for the defendant. We previously left this question open in *Smith v. State*.[85] In *Smith*, we

---

[83] *See LaBrake v. State*, 152 P.3d 474, 480 (Alaska App. 2007).

[84] *State v. Jones*, 759 P.2d 558, 566 (Alaska App. 1988); *see also* Alaska R. Crim. P. 35.1(g).

[85] *Smith v. State*, 185 P.3d 767 (Alaska App. 2008).

examined the related question of whether the decision to file a *cross*-petition for hearing is a decision for the attorney or for the defendant.[86] In that case, this Court reversed Smith's convictions, and the State filed a petition for hearing in the supreme court challenging our decision. The supreme court ultimately reversed our decision and affirmed Smith's convictions. In post-conviction relief proceedings, Smith argued that his appellate attorney had provided ineffective assistance of counsel by failing to file a cross-petition for hearing of a different issue that he had lost in this Court.[87]

We declared that, given the complexity of the decision to file a cross-petition for hearing in a case that a defendant has already won in this Court, the decision was a tactical one for Smith's attorney.[88] In particular, we noted that counsel could reasonably conclude that urging the supreme court to grant review on an additional issue might make it more likely that the supreme court would actually grant discretionary review of the case (and affirm the defendant's convictions), and that the risk was not worth taking if the additional issue was not a strong one. And because Smith did not show that his attorney made an *unreasonable* tactical decision, we affirmed the dismissal of Smith's request for post-conviction relief.[89]

But the decision to seek the supreme court's review after an unsuccessful appeal in this Court involves a different calculus — and is ultimately a decision for the defendant after consultation with counsel. In that situation, the failure to file a petition for hearing deprives the defendant of the benefit of an entire proceeding and the opportunity to exercise their right to persuade the Alaska Supreme Court to review their

---

[86] *Id.* at 768-69.

[87] *Id.* at 768.

[88] *Id.* at 769-70.

[89] *Id.* at 770.

convictions (and preserve any federal claims for later habeas corpus review).[90] In contrast, in *Smith*, the State had already initiated a petition for hearing, and the decision to cross-petition on a separate issue was therefore more akin to an attorney's strategic decision as to what issues to raise on appeal.[91] Moreover, the tactical considerations innate to filing a cross-petition for hearing are generally absent when a defendant has lost in this Court and is deciding unilaterally whether to pursue further appellate review.

We therefore conclude that the superior court erred when it found that Bair had made a "tactical choice" to pursue a *Grinols* petition. As a factual matter, Bair expressly disclaimed that he had any tactical reason for failing to advise Mack of his right to a petition for hearing. And as a legal matter, the decision to pursue one procedural vehicle instead of another was not Bair's decision to make.

Accordingly, we must consider whether Mack set forth a *prima facie* case that he would have filed a petition for hearing if he had been properly advised. At this stage in the proceedings, a court is required to accept all well-pleaded assertions of fact in Mack's application as true and determine whether those assertions of fact, if ultimately proven, would entitle the applicant to post-conviction relief.[92] In assessing whether an applicant has established a *prima facie* case for relief, a trial court may not engage in assessments of credibility or weighing of the evidence.[93]

---

[90] *See Kargus v. State*, 169 P.3d 307, 316 (Kan. 2007); *Ex parte Owens*, 206 S.W.3d 670, 674 (Tex. Crim. App. 2006).

[91] *Coffman v. State*, 172 P.3d 804, 810 (Alaska App. 2007) ("The normal rule under Alaska law . . . is that a defendant's appellate attorney has the responsibility of deciding which issues to raise on appeal.").

[92] *See LaBrake v. State*, 152 P.3d 474, 480 (Alaska App. 2007).

[93] *Alexie v. State*, 402 P.3d 416, 418 (Alaska App. 2017) ("Although a judge may
(continued...)

Viewing the record in this light, we conclude that Mack set out a *prima facie* case that, had his attorneys informed him of the right to file a petition for hearing, he would have done so.[94] Mack averred that he unwaveringly wanted to pursue all of his legal options to challenge his conviction and that he never told an attorney to forgo any legal option. Although Mack stated that he did not remember whether he had discussed with Cavanaugh or Bair the option of filing an "appeal" in the Alaska Supreme Court, he said that he would have done so had he known he could "have appealed [each] case further." And Bair's advice to Mack to "file your *Grinols* [application] now" underscores Bair's knowledge that Mack — who had been convicted of murder and received a 99-year sentence — was interested in pursuing further remedies.

In its order, the court found that, even absent any further explanation by Bair, Mack "was presumably aware of the opportunity to appeal," and the court repeatedly put the burden on Mack to show that he told his attorneys of his desire to "appeal." But the basis for the court's presumption that Mack was aware of "the opportunity to appeal" is unclear. And, at this stage of the proceeding, before any evidence had been taken, the superior court was required to view all factual allegations in Mack's favor — and credit his statement in his affidavit that, had he known he could have pursued further appellate review, he would have done so.

---

[93] (...continued) grant summary judgment and end post-conviction relief litigation short of trial, a judge has no authority to grant summary judgment based on the judge's pretrial assessments of witness credibility or pretrial assessments of the comparative strength of the parties' positions.").

[94] *See David v. State*, 372 P.3d 265, 269 (Alaska App. 2016) (recognizing that this Court reviews *de novo* the legal question of whether a post-conviction relief applicant has set forth a *prima facie* case for relief).

For these reasons, we conclude that Mack established a *prima facie* case of ineffective assistance of counsel as to Bair. We therefore remand Mack's case for an evidentiary hearing on this claim.

*Our resolution of Mack's "layered" claim against his first post-conviction relief counsel in the superior court and his direct appellate counsel*

With respect to Cavanaugh, we agree with the superior court that Mack set out a *prima facie* case of deficient consultation. But the court dismissed the layered claim of ineffective assistance of counsel against Smith (for failing to challenge the competency of Cavanaugh), ruling that — although Cavanaugh failed to fulfill his duty of consultation — Mack did not show that any of the claims Cavanaugh could have raised in a petition for hearing would have been successful.

As we have already explained, Mack did not need to show that any of the claims Cavanaugh could have raised in a petition for hearing would have been successful. He needed only to show a reasonable possibility that, but for Cavanaugh's failure to inform him about his right to file a petition for hearing, he would have filed a petition for hearing. And as explained previously, Mack established a *prima facie* case on this point.

However, there is an additional wrinkle in Mack's case with respect to Cavanaugh. Mack did not raise a claim against Cavanaugh until his second post-conviction application — *i.e.*, his *Grinols* application. We must therefore determine how to evaluate prejudice in the context of a layered ineffective assistance of counsel claim involving the failure to consult regarding a petition for hearing — *i.e.*, a claim that first post-conviction relief counsel (here, Smith) incompetently failed to challenge the incompetence of an earlier attorney (Cavanaugh) for failing to inform the defendant about the right to file a petition for hearing in the supreme court.

– 35 –                                                                                    2738

We conclude that, under these particular circumstances, the defendant must prove three things:

First, the *Grinols* application must be deemed timely.[95]

Second, the defendant must show that the failure by their first post-conviction relief counsel to recognize or pursue the omitted issue constituted incompetent representation. It is the defendant's burden to negate the possibility that the attorney chose, for valid tactical reasons, not to raise the issue.[96] Clearly relevant to this question of competency is whether the defendant knew about the right to file a petition for hearing and the possible attack on their direct appellate attorney at the time of the defendant's first post-conviction relief application, but failed to mention it.[97]

Finally, where a defendant alleges that their appellate attorney failed to appraise them of the right to file a petition for hearing, the defendant must show this failure was unreasonable and that the defendant would have filed the petition but for that deficient representation. There is no need to establish a reasonable possibility that the defendant would have prevailed on the petition.

Thus, the key question on remand is whether Smith was ineffective for failing to raise a claim against Cavanaugh in Mack's first application for post-conviction

---

[95]   *See* AS 12.72.025 (setting a one-year statute of limitations for claims of ineffective assistance of post-conviction relief counsel).

[96]   *Grinols v. State*, 10 P.3d 600, 619 (Alaska App. 2000), *aff'd in part*, 74 P.3d 889 (Alaska 2003).

[97]   *See id.* ("[W]hen a defendant asserts that their post-conviction relief attorney inexcusably failed to pursue arguments that the defendant's trial attorney was incompetent, this assertion will be defeated by evidence that the defendant was aware of the possible attacks on their trial attorney's performance when the first post-conviction relief action was litigated but failed to mention these potential claims to their post-conviction relief attorney.").

relief — *i.e.*, whether Smith unreasonably failed to raise this claim as part of Mack's post-conviction relief action. Because Mack did not have the benefit of this decision, we remand this question to the superior court to give Mack an opportunity to amend his post-conviction relief application to attempt to establish a *prima facie* case under this standard.

*Conclusion*

Accordingly, we VACATE the superior court's order dismissing Mack's claim for post-conviction relief and REMAND this case for further proceedings consistent with this opinion.